IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE WILSON, ROBERT FIORETTI, EARL C. WILLIAMS, EUGENE WOLF, NINA STONER, MINOR J. ALLEN JR., GERALDINE YOUNG, FRANCISCO RODRIGUEZ, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 22-cv-4577 |
| v. | ) ) | |
| CITY OF CHICAGO BOARD OF ELECTION COMMISSIONERS, a municipal agency, MARISEL A. HERNANDEZ, Chair, WILLIAM J. KRESSE, Commissioner, and JUNE A. BROWN, Commissioner, each in their official capacities as members of the Chicago Board of Election Commissioners, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT

Plaintiffs, **Willie Wilson, Robert Fioretti, Earl C. Williams, Eugene Wolf, Nina Stoner, Minor J. Allen Jr., Geraldine Young, and Francisco Rodriguez,** through their attorney, file their verified complaint respectfully requesting entry of a declaratory judgment and other relief pursuant to 42 U.S.C. §1983 against Defendants, **City of Chicago Board of Election Commissioners**, and **Marisel A. Hernandez**, Chair, and **William J. Kresse**, Commissioner, and **June A. Brown**, Commissioner, each in their official capacities as Commissioners of the Chicago Board of Election Commissioners.

## Nature of the Case

1. This is an action for a declaratory and injunctive relief, seeking to enjoin the Chicago Board of Election Commissioners from changing precinct boundaries mid-election cycle, and less than 30 days prior to the November 8,

2022 general election, without sufficient impact assessment upon African-American, Latino, Native American, and Asian voters, with at least 90 days prior notice provided to all voters in Chicago. Defendants are state actors that comprise the election authority for the City of Chicago that is embarking upon a process to remove at least 779 precincts and a considerable number of polling locations in Chicago. The change made on the eve of the November 8, 2022, and after petitioning would have commenced for the February 28, 2023 municipal general election and April 4, 2023 municipal runoff election would disenfranchise voter, create voter confusion on election day, deny to Plaintiffs and other voters their First Amendment rights of association and of ballot access, and their Fourteenth Amendment right to equal protection under the law.

### Parties

2.　　Plaintiff, Dr. Willie Wilson, is a registered voter in Chicago who resides in the 42nd Ward of the City of Chicago, IL and is a candidate for Chicago Mayor at the February 28, 2023 Chicago municipal general election. Plaintiff, Dr. Wilson, is deeply concerned about the uncertainty, voter confusion, and the potential denial of the right to vote arising from the proposed reduction of precincts, polling locations, and election judges that would certainly limit voter access at the upcoming general election and subsequent municipal election, and deny First Amendment ballot access rights to tens of thousands of Chicago voters.

3.　　Plaintiff, Robert Fioretti, is a registered voter in Chicago who resides in the remapped 34th Ward of the City of Chicago and is a candidate for Cook County Board President at the November 8, 2022 general election. Plaintiff, Robert Fioretti, is a former Alderperson of the City of Chicago, and is concerned about the

reduction of precincts, polling locations, and voter access at the upcoming general election, particularly since the redistricting information will not be available until shortly before the November 8, 2022 general election, which hampers, delays, and prevents his campaign from developing election-day canvassing strategies, including scheduling volunteers at polling locations, and contacting voters who previously voted at specific polling locations ("GOTV" efforts).

4.      Plaintiff, Earl C. Williams is a registered voter in Chicago and resides in the 3rd Ward of the City of Chicago, IL.

5.      Plaintiff, Eugene Wolf, is a registered voter in Chicago and resides in the 27th Ward of the City of Chicago.

6.      Plaintiff, Nina Stoner is a registered voter in Chicago and resides in the currently remapped 21st Ward, but was previously in the 34th Ward of the City of Chicago.

7.      Plaintiff, Minor J. Allen, Jr.  is a registered voter in Chicago and resides in the 17th Ward of the City of Chicago.

8.      Plaintiff, Geraldine Young, is a registered voter in Chicago and resides in the 28th Ward of the City of Chicago.

9.      Plaintiff, Francisco Rodriguez, is a registered voter in Chicago and resides in the 11th Ward of the City of Chicago.

10.      Defendant, Marisel A. Hernandez, serves in her official capacity as one of three appointed Commissioners of the Chicago Board of Election Commissioners, and is the Chair of the Chicago Board of Election Commissioners.

11.     Defendant, William J. Kresse, serves in his official capacity as one of three appointed Commissioners of the Chicago Board of Election Commissioners, and is the Secretary of the Chicago Board of Election Commissioners.

12.     Defendant, June A. Brown, serves in her official capacity as one of three appointed Commissioners of the Chicago Board of Election Commissioners, and is the Secretary of the Chicago Board of Election Commissioners.

13.     Defendant, Chicago Board of Election Commissioners ("CBEC"), is a unit of the City of Chicago[1], a municipal corporation, and is the duly authorized election authority for the City of Chicago that oversees and administers elections within the geographic boundaries of the City of Chicago, IL, including but not limited to primary and general elections in even numbered years, and Chicago municipal general elections and runoff elections every four years the next of which will occur in the year 2023.

14.     At all times relevant to this action, Defendants are and were engaged in state action under color of state law.

15.     Defendants are being sued in their official capacities for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as for costs and attorney's fees under 42 U.S.C. § 1988(b).

---

1   The US Census reports that the City of Chicago has 2,696,555 inhabitants as of July 21, 2022.  https://www.census.gov/quickfacts/chicagocityillinois [last visited 8/28/2022]

The City of Chicago approved a $16.7 billion budget for fiscal year 2022. https://www.chicago.gov/city/en/depts/obm/provdrs/budget/svcs/2022-budget-documents.html [last visited 8/28/2022].

The Chicago Board of Election Commissioners received an appropriation of $25,828,604 in the 2022 budget (at Annual Budget, pg. 19).  *Id.*

## Jurisdiction

16.     Jurisdiction in this case is predicated on 28 U.S.C. § 1331, 1343(a)(3), 1343(a)(4), and 1357, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983 and 1988, and a claim under the federal Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202).

## Venue

17.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Cook County, IL, and within the Northern District of Illinois.

## Relevant Facts + Election Code

18.     Article 11 of the Illinois Election Code, 10 ILCS 5/11-1, et seq. defines the "Establishment of Election Precincts," as most recently amended by P.A. 102-668 (eff. 11/15/2021).  Please see 10 ILCS 5/11-1, et seq. and P.A. 102-668, attached as **<u>Exhibit A.</u>**

19.     The CBEC website as of August 28, 2022, lists the same 2,069 precincts with 1,043 polling locations at which voters voted in the June 28, 2022 partisan primary elections at which established political parties selected their candidates for the November 8, 2022 general election. The CBEC website for ward polling locations is as follows:

https://app.chicagoelections.com/documents/general/document_464.pdf [last visited 8/28/2022]  Please see "document_464.pdf" attached as **<u>Exhibit B</u>**.

20.     The CBEC anticipates disclosing new precinct boundaries and addresses for new polling locations in October 2022.

21.     The CBEC public disclosure of new precinct boundaries and new addresses for polling locations will be less than 30 days prior to the November 8, 2022 general election.

22.     The CBEC has stated that it will eliminate 779 precincts in Chicago with reduction of 40-50% in many wards.  Please see summary of existing precinct in each ward, and CBEC proposed number of precincts, attached as **Exhibit C**.

23.      The CBEC's proposed reduction of precincts will disparately impact racial and/or ethnic minority voting blocs including African-American, Latino, Native American, and Asian voters, including but not limited hundreds of precincts within the territory of the 3rd, 8th, 9th, 14th, 17th, 18th, 21st Wards, and the former 34th Ward, resulting in a dilution of the corresponding voting blocs representation at elections.

24.     The Election Code 10 ILCS 5/11-4 delegates to the CBEC the duty of designating "the polling place in each precinct in such city, village or incorporated town which has adopted or is operating under said Article 6, and to give public notice thereof, and shall cause the same to be fitted up, warmed, lighted and cleaned, but in each election precinct and in each area for which a registration place is designated such place or places shall be in the most public, orderly and convenient portions thereof, and no building or part of a building shall be designated or used as a place of registry, or revision of registration, or as a polling place, in which spirituous or intoxicating liquor is sold."

25.     There is no Legislatively defined procedure, or Legislatively defined data or demographic information that the CBEC should use to determine precinct boundaries or addresses of polling locations.

26. The CBEC procedure to define precinct boundaries and polling locations is undertaken by the CBEC without public comment or public review.

27. The CBEC's precinct boundaries and addresses of polling locations are not subject to review and approval by the City of Chicago City Council.

28. The only criteria defined by the Legislature for the CBEC to determine boundaries for precincts is contained in the Election Code, 10 ILCS 5/11-1, et seq., including but not limited to 10 ILCS 5/11-3.

29. For the City of Chicago precinct size as defined in 10 ILCS 5/11-3(c) was amended through P.A. 102-668 (eff. 11-15-21) to increase the precinct from "400 actual voters" to "1,800 registered voters if the precinct is located in a county with 3,000,000 or more inhabitants" as follows:

(c) Within 90 days after each presidential election, a board in a city with more than 500,000 inhabitants shall revise and rearrange such precincts on the basis of the votes cast at such election, making such precincts to contain, as near as practicable: (i) 1,200 registered voters if the precinct is located in a county with fewer than 3,000,000 inhabitants; or (ii) 1,800 registered voters if the precinct is located in a county with 3,000,000 or more inhabitants. However, any apartment building in which more than 1,200 registered voters or 1,800 registered voters, as applicable, reside may be made a single precinct even though the vote in such precinct exceeds 1,200 or 1,800 registered voters, as applicable.

30. The Election Code, 10 ILCS 5/11-3(c) anticipates that precincts shall be revised and rearranged **after** the presidential election, and therefore, would allow election authorities almost two years **prior** to the next general election to notify voters of such changed precinct boundaries and new polling locations.

31. Section 11-6 of the Election Code, 10 ILCS 5/11-6, further defined additional requirements, including a requirement that the CBEC is obligated to disclose precinct boundaries **at least 90 days** before the next scheduled election, as follows:

Sec. 11-6.  Within 60 days after July 1, 2014 (the effective date of Public Act 98-691), each election authority shall transmit to the principal office of the State Board of Elections and publish on any website maintained by the election authority maps in electronic portable document format (PDF) showing the current boundaries of all the precincts within its jurisdiction.  **Whenever election precincts in an election jurisdiction have been redivided or readjusted,** the county board or board of election commissioners shall prepare maps in electronic portable document format (PDF) showing such election precinct boundaries **no later than 90 days before the next scheduled election**. The maps shall show the boundaries of all political subdivisions and districts. The county board or board of election commissioners shall immediately forward copies thereof to the chair of each county central committee in the county, to each township, ward, or precinct committeeperson, and each local election official whose political subdivision is wholly or partly in the county and, upon request, shall furnish copies thereof to each candidate for political or public office in the county and shall transmit copies thereof to the principal office of the State Board of Elections and publish copies thereof on any website maintained by the election authority. *(Source: P.A. 99-642, eff. 7-28-16; 100-1027, eff. 1-1-19.)*

32.    As of August 27, 2022 the CBEC has **<u>not</u>** prepared "maps in electronic portable document format (PDF) showing such election precinct boundaries" in compliance with 10 ILCS 5/11-6 since there are fewer than 90 days before the November 8, 2022 general election, and is in violation of the disclosure obligation.

33.    All polling locations must be accessible to persons with disabilities pursuant to Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134, and the Department of Justice's Title-II-implementing regulation, 28 C.F.R. Part 35, as well as accessible to voters with disabilities and additionally to elderly voters, pursuant to 10 ILCS 5/11-4.2(a) which states as follows:

Sec. 11-4.2. (a) Except as otherwise provided in subsection (b) all polling places shall be accessible to voters with disabilities and elderly voters, as determined by rule of the State Board of Elections, and each polling place shall include at least one voting booth that is wheelchair accessible.

34.    The majority of CBEC's polling locations have not been accessible and in compliance with accessibility requirements since at least 2017, when the Dept. of

Justice initiated litigation against the CBEC for its lack of compliance, as documented by a settlement agreement reached with the Dept. of Justice. Please see press release from CBEC and Settlement Agreement, attached as **Exhibit D**.

35. At the June 28, 2022 primary election 206 polling locations were accessible to persons with disabilities of 1,043 locations. Please see **Exhibit B**.

36. The CBEC has extended and stayed implementation of its statutory obligation to provide accessible voting locations through at least June 28, 2022, and despite a settlement agreement with the Dept. of Justice.

37. After the 2010 decennial redistricting, the City of Chicago adopted its ward redistricting ordinance on January 19, 2012, however, through ordinance adopted by the City Council the application and use of the adopted 2012 ward remap was stayed until 2015.

38. On information and belief, the CBEC did not redistrict precinct boundaries and identify polling locations until after the January 19, 2012 ward redistricting maps went into effect in 2015.

39. Gerrymandering is a valid and decennial concern that is well-known throughout the State and particularly in Chicago (see e.g. remapped wards not contiguous and compact); gerrymandering remains an even greater concern for redistricting of the precinct boundaries and designation of polling locations because the CBEC does not use or rely upon demographic data. On information and belief, the CBEC has given preferential treatment to Ward 19 at the request of Ald. Matt O'Shea whose ward was scheduled for a 50% reduction in precincts from 57 to 28 precincts, but at his request, the CBEC increased the precincts in Ward 19 to 26 precincts, because Ald. O'Shea was concerned the decrease would limit voter

access. Please see Chicago Tribune article "New Chicago elections map cutting precincts significantly ahead of November general election" by Kinsey Crowley[2] (Aug 22, 2022 at 5:00 am) copy attached hereto as **Exhibit E.**

40.     Plaintiffs are voters in Chicago who wish to preserve and exercise their right to vote in person on a paper ballot at the November 8, 2022, and to effectively canvass voters and campaign at in-person polling locations on election day.

41.     Plaintiffs are unable to determine their precincts and their polling locations as of the date of filing of this lawsuit, and will be unable to meaningfully prepare for the campaign activities on election day if new precinct boundaries and new polling locations are disclosed less than 30 days before the November 8, 2022 general election at some time in October 2022.

42.     In *Eu v. San Francisco County Democratic Central Comm.,* 489 US 214, 223 (1989) the U.S. Supreme Court confirmed that First Amendment protections are applicable to political party speech as follows:

> Indeed, the First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office. *Monitor Patriot Co. v. Roy*, 401 U. S. 265, 272 (1971); see also *Mills v. Alabama*, 384 U. S. 214, 218 (1966). Free discussion about candidates for public office is no less critical before a primary than before a general election. Cf. *Storer v. Brown*, 415 U. S. 724, 735 (1974); *Smith v. Allwright*, 321 U. S. 649, 666 (1944); *United States v. Classic*, 313 U. S. 299, 314 (1941). In both instances, the "election campaign is a means of disseminating ideas as well as attaining political office." *Illinois Bd. of Elections*, supra, at 186.

43.     Plaintiffs wish to exercise their First Amendment right to organize and support the candidates of their choice at the November 8, 2022 general election by

---

2   Chicago Tribune article is available online at the following website:
https://www.chicagotribune.com/politics/elections/ct-chicago-cutting-voter-precincts-2022-election-20220822-mccavv63wndyrfnkaqps3ui3za-story.html
[last visited 8/27/2022] and

greeting voters at polling locations on election day, November 8, 2022, handing out literature to voters outside of polling locations, and promoting their candidates to voters who are voting in-person at polling locations on election day.

44.    Plaintiffs, and other voters and candidates, are unable to coordinate, staff, and plan election day campaign activities at polling locations without having precinct boundaries and polling locations in sufficient time prior to the November 8, 2022 election; in addition, Plaintiffs and other voters and candidates are not able to obtain voter data from the CBEC for voters in that precinct and specific polling location, and voter turnout from prior elections.

45.    Plaintiffs are also being denied their right to obtain maps of precinct boundaries in each of the 50 wards, and prevented from developing and preparing campaign strategies at polling locations on election day November 8, 2022.

46.    Plaintiffs Willie Wilson, Earl C. Williams, Eugene Wolf, Nina Stoner, Minor J. Allen Jr, and Geraldine Young are African-American voters, Plaintiff, Robert Fioretti is a Caucasian voter, Plaintiff, Francisco Rodriguez is a Latino voter, and all other similarly situated voters, are collectively being disenfranchised and discriminated against, as compared to voters in counties of less than 3,000,000 inhabitants, through the uncertainty of their precinct and their polling location, and also very likely not being timely notified of their new polling location, having to travel a greater distance to reach their polling location, and having to wait in longer lines to exercise their right to cast a paper ballot in person on election day November 8, 2022, thereby jeopardizing their right to cast a paper ballot on election at their polling location.

47. It is inequitable and inconsistent with prior Legislative action and actions of the City of Chicago, that sought to avoid implementing changes mid-election cycle or immediately prior to an election; that is, it is inequitable to change precinct boundaries and polling locations after the June 28, 2022 primary election and before the November 8, 2022 general election, since voters will remember their former precincts and former polling locations, and may not become aware of new precincts or polling locations, risking considerable voter confusion on election day that could jeopardize the integrity of the electoral process and undermine voter confidence in the election.

48. Plaintiffs have been, and continued to be injured, harmed, and denied their First Amendment and Fourteenth Amendment ballot access rights through the CBEC's proposed redistricting of precinct boundaries and reduction of polling locations, including but not limited being unable to determine their precinct and the address of their polling locations in sufficient time to prepare for the November 8, 2022 general election, determining and staffing polling locations for the Nov. 8, 2022 general election to support the candidates of their choice, and uncertainty about where their polling locations will be located; furthermore, it is anticipated that tens of thousands of voters would be required to travel much further distances to reach a polling location and have longer lines and wait times to vote, thereby jeopardizing their right to cast a paper ballot in person on election day.

## Count I
## Violation of Voting Rights Act of 1965

1-48    Plaintiffs restate Par. 1-48 above as Par. 1-48 of Count I.

49.    The Voting Rights Act of 1965, 52 U.S. Code §10101, et seq. prohibits any procedure that adversely impacts and/or results in the denial of the right to vote on account of race.

50.    The Voting Rights Act of 1965, 52 U.S. Code § 10301, prohibits any redistricting plan or voting procedure that results in the denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites, as follows:

**§10301.  Denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites; establishment of violation**

(a)  No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

(b)  A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

*( Pub. L. 89–110, title I, §2, Aug. 6, 1965, 79 Stat. 437 ; renumbered title I, Pub. L. 91–285, §2, June 22, 1970, 84 Stat. 314 ; amended Pub. L. 94–73, title II, §206, Aug. 6, 1975, 89 Stat. 402 ; Pub. L. 97–205, §3, June 29, 1982, 96 Stat. 134 .)*

51.    For purposes of redistricting, if a redistricting plan results in a maximum population deviation of less than 10%, the plan nonetheless violates the

Equal Protection Clause of the Fourteenth Amendment if the redistricting process contains the "taint of arbitrariness or discrimination." See *Roman v. Sincock*, 377 U.S. 369, 710 (1964).  If the redistricting process was either arbitrary or discriminatory, then the resulting redistricting plan is unconstitutional and therefore void *ab initio*.

52.    The CBEC does not use population data from the U.S. Census for its redistricting of precinct boundaries or the determination of polling locations.

53.    The CBEC did not obtain or consider demographic data, including race, national origin, age, or data for the number of voters with disabilities, prior to undertaking the redistricting of precinct boundaries and polling locations.

54.    The CBEC did not study the impact its reduction of precincts would have upon African-American voters in Chicago.

55.    The CBEC did not consider that a significant decrease in the number of precincts in largely African-American wards in Chicago would limit voter access, and thereby create inequity.

56.    The CBEC process of redistricting of precinct boundaries and selection of polling locations is arbitratary and discriminatory, since it does not address the inequity that will result in largely African-American wards in Chicago.

57.    The US Postal Service in Chicago has been suffering from delays, mis-delivered mail, lost mail, and other concerns that have been publicly expressed in recent years through the present.

58.    Through the proclamation of results for the June 28, 2022 primary election, the CBEC reported that the City of Chicago had 1,498,813 registered voters.

59.     In order to notify each registered voter in Chicago about the CBEC's new precinct boundaries and new polling locations, on information and belief, the CBEC would need undertake the following steps in less than 30 days:

(a)   re-program the CBEC voter database for new precinct boundaries and polling locations,

(b)   audit and verify the accuracy of the new precinct and polling location information,

(c)   prepare and approve a Notice in multiple languages that would adequately notify each voter about each voter's new precinct and new polling location,

(d)   generate and print a customized notice to each of Chicago's 1,498,813 registered voters advising each voter of his/her own precinct and polling location,

(e)   arrange for and transport at least 1,498,813 paper notices to the US Postal Service with a sufficient time in advance of the November 8, 2022 general election to allow the US Postal Service to process, sort, and deliver each notice prior to election day.

60.     There is potentially a one or two week window of time in October 2022 for the CBEC to complete all of the steps to notify Chicago's 1,498,813 through the US Postal Service mail system, which is a mandatory requirement of pursuant to Article 11 of the Election Code.

61.     On information and belief, the CBEC's staff and resources will not be available to meaningfully and equitably redistrict precinct boundaries and meaningfully and equitably designate polling locations until after the April 4, 2023 municipal runoff election.  Specifically, the CBEC's staff is currently preparing for

the November 8, 2022 general election and its staff and resources are already allocated for those tasks. Immediately after the November 8, 2022 general election the CBEC's staff will be allocated to canvass and proclaim the election results of the November 8, 2022 general election while accepting candidate petitions for the February 28, 2023 municipal election during the November 21-28, 2022 filing period, overseeing the petition challenge process throughout December 2022, and actively preparing for the February 28, 2023 municipal election.

62.     It is likely and probable that the CBEC will not be able to effectively and actually notify all of Chicago's 1,498,813 voters of their new polling locations through use of the US Postal Service mail service prior to the November 8, 2022 general election.

63.     On information and belief, there will be voter confusion through designation of new precinct boundaries and new polling locations, when voters return to the polling locations that were used in recent elections to discover that their polling location was relocated to a different address, and are unable to (a) locate the address of the relocated polling location and/or (b) travel to the relocated polling location prior to closure of the polls at 7:00 PM on November 8, 2022.

64.     Plaintiffs respectfully request a finding and determination from this honorable court that the CBEC's implementation of precinct redistricting and designation of polling locations is in violation of the Voting Rights Act since it will disparately and inequitably impact African-American voters in Chicago.

65.     Plaintiffs respectfully request an injunction be issued to direct the CBEC to delay implementation of its precinct redistricting and designation of new

polling locations until after the Chicago Municipal Runoff Elections on April 4, 2023.

WHEREFORE, Plaintiffs respectfully request entry of an order as follows:

(a) finding and declaring that the CBEC's intention and process to redistrict precincts mid-election cycle, and designate new polling locations from those used at the June 28, 2022 primary election are in violation of Article 11 of the Election Code, 10 ILCS 5/11-1, et seq., in violation of the Voting Rights Act, contrary to Plaintiff's First and Fourteenth Amendment rights, and unconstitutional and void *ab initio*;

(b) issuing an injunction to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and such time as the CBEC provides data to support an equitable redistricting and polling location designation, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago; and

(c)     for any further relief that is just and appropriate.

### Count II
**Declaratory judgment that CBEC precinct remap as applied is unconstitutional**

1-65.   Plaintiffs repeat and restate Par. 1-65 above as if fully stated herein.

66.     The CBEC's proposed procedure for redistricting precincts and determining new polling locations are not in compliance with the provisions of Article 11 of the Election Code, and do not afford sufficient time for voters to familiarize themselves with their precincts, determine their new polling locations, prepare for election day canvassing and campaigning, and for the CBEC to

meaningfully and appropriately convey all necessary information to all voters in Chicago through the US Postal Service mail.

67.     The CBEC's process for redistricting precinct boundaries as alleged herein are arbitrary and capricious, and will result in
denial of the Plaintiff's First Amendment right to petition voters, a denial of their First Amendment right to associate as a political party to nominate Plaintiffs' candidates of their choice, and a denial of their First Amendment right to promote the Libertarian party at the June 28, 2022 primary.

68.     A real and actual controversy exists between the parties.

69.     Plaintiffs have no adequate remedy at law, other than this action pursuant to 42 U.S.C. § 1983 for declaratory and equitable relief.

70.     Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless the CBEC's proposed precinct reduction and redistricting is declared unlawful and enjoined by this honorable Court.

71.     A declaration of the Plaintiffs' rights on an expedited basis in advance of the November 8, 2022 general election would provide clarity to voters and candidates, and direction to the CBEC regarding the redistricting process that is not otherwise afforded through the Election Code for an impartial and equitable redistricting of precincts and designation of polling locations.

WHEREFORE, Plaintiffs, through their attorney, respectfully request entry of a declaratory judgment as follows:

(a) finding and declaring that the CBEC's intention and process to redistrict precincts mid-election cycle, and designate new polling locations from those used

at the June 28, 2022 primary election are in violation of Article 11 of the Election Code, 10 ILCS 5/11-1, et seq., in violation of the Voting Rights Act, contrary to Plaintiff's First and Fourteenth Amendment rights, and unconstitutional and void *ab initio*;

(b) issuing an injunction to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and such time as the CBEC provides data to support an equitable redistricting and polling location designation, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago; and

(c) any other relief that is just and equitable to protect Plaintiffs', other voters', and all candidates' First and Fourteenth Amendment rights.

### Count III
### Denial of First Amendment ballot access rights (42 U.S.C. § 1983)

1-71. Plaintiffs repeat and restate Par. 1-71 above as if fully stated herein.

72. The Supreme Court in *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570 (1983), instructed lower courts to "consider the character and magnitude of the asserted injury to the rights protected" by the constitution, to "identify and evaluate the precise interests put forth by the State," and then to decide whether the interests justify the restriction.

73. The City of Chicago and/or the CBEC have previously delayed implementing ward boundary redistricting, precinct redistricting, and even delayed implementing requirements for accessibility at all polling locations.

74.     Staying implementation of the CBEC's proposed precinct redistricting and designation of new polling locations would be equitable and would preserve Plaintiffs' and other voters' First Amendment ballot access rights.

75.     Changing precinct boundaries and polling locations mid-election cycle, and not disclosing new precinct boundaries and polling locations less than 30 days before the November 8, 2022 election and relying upon the US Postal Service for delivery of notices to voters weeks or less before the November 8, 2022 general election would violate rights guaranteed to the Plaintiffs by the First Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, including but not limited to having a meaningful amount of time to prepare for election day canvassing, and an opportunity to cast a paper ballot in person on election day.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment as follows:

(a)     Assume original jurisdiction over this case;

(b)     Issue a temporary restraining order and/or preliminary injunction to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and such time as the CBEC provides data to support an equitable redistricting and polling location designation, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago;

(c)     Issue a declaratory judgment finding and declaring that the CBEC's intention and process to redistrict precincts mid-election cycle, and designate new

polling locations from those used at the June 28, 2022 primary election are in violation of Article 11 of the Election Code, 10 ILCS 5/11-1, et seq., in violation of the Voting Rights Act, contrary to Plaintiff's First and Fourteenth Amendment rights, and unconstitutional and void *ab initio*;

(d)    Issue a permanent injunction against the CBEC to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and such time as the CBEC provides data to support an equitable redistricting and polling location designation, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago;

(e)    Order Defendants to pay to Plaintiffs their costs and a reasonable attorney's fees under 42 U.S.C. § 1988(b); and

(f)    Retain jurisdiction over this matter to enforce this court's order, and

(g)    Order the CBEC to provide to Plaintiffs such further and additional relief as the Court deems just, appropriate, and equitable.

<u>Count IV</u>
**Denial of Fourteenth Amendment equal protection rights (42 U.S.C. § 1983)**

1-75.    Plaintiffs repeat and restate Par. 1-75 above as if fully stated herein.

76.    Defendants' actions violate rights guaranteed to these Plaintiffs by the Fourteenth Amendment to the United States Constitution to equal protection under the law, as enforced through 42 U.S.C. § 1983.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment as follows:

(a)    Assume original jurisdiction over this case;

(b)     Issue a temporary restraining order and/or preliminary injunction to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and such time as the CBEC provides data to support an **equitable** redistricting and polling location designations, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago;

(c)     Issue a declaratory judgment finding and declaring that the CBEC's intention and process to redistrict precincts mid-election cycle, and designate new polling locations from those used at the June 28, 2022 primary election are in violation of Article 11 of the Election Code, 10 ILCS 5/11-1, et seq., in violation of the Voting Rights Act, contrary to Plaintiff's First and Fourteenth Amendment rights, and unconstitutional and void *ab initio*;

(d)     Issue a permanent injunction against the CBEC to enjoin the CBEC and its employees, agents, and designees, from enforcing or giving any effect to the proposed precinct reduction and redistricting, and the proposed designation of new polling locations until after April 4, 2023 and until such time as the CBEC provides data to support an **equitable** redistricting and polling location designations, that will not disparately impact African-American, Latino, Asian, or other voting blocs in Chicago;

(e)     Order Defendants to pay to Plaintiffs their costs and a reasonable attorney's fees under 42 U.S.C. § 1988(b); and

(f)     Retain jurisdiction over this matter to enforce this court's order, and

(g)     Order the CBEC to provide to Plaintiffs such further and additional

relief as the Court deems just, appropriate, and equitable.

Respectfully submitted:

By:     _____/s/Andrew Finko_____
              Attorney for Plaintiffs

Andrew Finko
166 W. Washington St.
Suite 400
Chicago, IL 60602
Ph   (773) 480-0616
Em Finkolaw@Fastmail.FM
IL ARDC No. 06201634

## Verification pursuant to 28 U.S.C. Sect. 1746

The undersigned, Plaintiff, declares and verifies under penalty of perjury under the laws of the
United States of America that the facts contained in the foregoing Verified Complaint are true
and correct to the best of his/her knowledge.

By: _____
    Signature

Printed Name:     Willie Wilson

Address:     363 E. Wacker Drive #4906

    Chicago, IL 60601

Chicago Ward:     42

**Verification pursuant to 28 U.S.C. § 1746**

The undersigned, **Plaintiff,** declares and verifies under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of his/her knowledge.

By: _____
Signature

Printed name: _____ Robert Fioretti _____

Address: _____ 1540 W. Jackson Blvd. _____

_____ Chicago, IL 60607 _____

Chicago Ward: _____ 34 _____

## Verification pursuant to 28 U.S.C. § 1746

The undersigned, **Plaintiff**, declares and verifies under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of his/her knowledge.

By: _____
Signature

Printed name: _Bro. Earl C. Williams_

Address: _4821 So. Calumet Ave_

_Chicago IL. 60615_

Chicago Ward: _3_

## Verification pursuant to 28 U.S.C. § 1746

The undersigned, **Plaintiff**, declares and verifies under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of his/her knowledge.

By: _Eugene Wolf_
          Signature

Printed name: _EuGeNe WOLf_

Address: _1945 W. MAYPolE AVE_

_CHICAGO IL 60612_

Chicago Ward: _27Th_

## Verification pursuant to 28 U.S.C. § 1746

The undersigned, **Plaintiff,** declares and verifies under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of his/her knowledge.

By: _Nina Stoner_
       Signature

Printed name: _Nina Stoner_

Address: _11946 S Eggleston_
       _Chicago IL 60628_

Chicago Ward: _21-34 ward._

## Verification pursuant to 28 U.S.C. § 1746

The undersigned, **Plaintiff,** declares and verifies under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of his/her knowledge.

By: _Geraldine Young_
Signature

Printed name: _Geraldine Young_

Address: _317 S. Albany_

_Chicago, Il 60612_

Chicago Ward: _28th Ward_